UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-176

| | | |
|---|---|---|
| **SWIFT BEEF COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **ALEX LEE, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on plaintiff's Motion to Strike (#32). After considering plaintiff's motion and reviewing pleadings, the court enters the following Order.

I.    **Background**

Plaintiff is a meat company that offers a range of brands and programs designed to meet the needs of purchasers. One such program is known as "Case Ready," which provides fresh meat cut and packaged to customer specifications and made ready for placement in coolers or freezers, such as at local grocery stores. Plaintiff offers beef, pork, and poultry options in its Case Ready business line. Defendant is a privately held company with two primary food distribution and retail operating companies: Merchants Distributors, Inc. and Lowes Foods, LLC. They service customers in North and South Carolina, Virginia, West Virginia, Georgia, Alabama, Florida, Tennessee, Ohio, Pennsylvania, and Kentucky. Defendant owns a plant in Lenoir, North Carolina, which is used as a meat processing and packaging facility that defendant leases out to operators. On April 21, 2014, defendant and plaintiff entered into a Lease Agreement and a Purchase Agreement ("the Agreements"). The Agreements had defendant lease the Lenoir plant

to plaintiff, and required plaintiff to supply defendant with certain Case Ready products. The Agreements have a ten year term and are linked; if a party fails to perform under one, both may be terminated. Due to a dispute over whether the Agreements were breached, this court earlier granted a preliminary injunction to bar defendant from evicting plaintiff while more discovery was conducted in this case.

Here, in accordance with Rule 12(f), Federal Rules of Civil Procedure, plaintiff moves to strike paragraphs 79 through 86 of defendant's Counterclaims, as well as a related Exhibit F, arguing that they are immaterial, impertinent, and scandalous. Plaintiff argues that, by including these paragraphs and that exhibit in its Counterclaims, defendant is attempting to inflame the trier of fact and prejudice plaintiff. In addition, plaintiff contends that such allegations may unfairly impact its customers. In response, defendant contends that the paragraphs are relevant to Swift Beef's corporate culture, they are not scandalous because they are based unequivocally in fact, and any prejudice already arose from prior media coverage.

**II.    Legal Standard**

A court may strike pleadings it considers "redundant, immaterial, impertinent, or scandalous," whether on motion by a party or of its own volition. Fed. R. Civ. P. 12(f); Franks v. Ross, 293 F.Supp.2d 599, 608 (E.D.N.C. 2003). A motion to strike should not be granted unless the content at issue "clearly can have no possible bearing on the subject matter of the litigation." Lane v. Endurance American Specialty Ins. Co., 2011 WL 1343201, at *4 (W.D.N.C. April 8, 2011). Motions to strike should "be granted infrequently." Id.; see also Godfredson v. JBC Legal Group, P.C., 387 F.Supp.2d 543, 547 (E.D.N.C.) (citing Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001)) (holding that motions to strike are "generally viewed with

disfavor because striking a portion of a pleading is a drastic remedy). However, a relaxed standard may be used for scandalous allegations, as "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matters of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations." 5C Wright, Miller & Marcus, Federal Practice & Procedure, § 1382 (3d ed. 2004).

### III.     Discussion

The paragraphs in question are as follows:

> 79. At the same time in 2017 that Swift Beef's performance at the Plant was reaching new lows, a bribery and collusion scandal was enveloping the highest-level executives of JBS SA, the parent company of JBS USA, which owns Swift Beef.
>
> 80. JBS SA is headquartered in Brazil. JBS SA's CEO is Brazilian billionaire Wesley Batista and its chairman is Wesley's brother, Joesley Batista. Until recently, Wesley was also the CEO of JBS USA.
>
> 81. In May 2017, Brazilian authorities announced that they were investigating whether JBS SA and the Batistas had engaged in a massive fraud in collusion with Brazilian state-owned bank BNDES.
>
> 82. As part of a leniency agreement, the Batistas admitted to paying bribes in excess of $123 million to hundreds of Brazilian politicians, including three presidents.
>
> 83. A Bloomberg article from May 26, 2017 summarizes the matter this way: "The meteoric rise of the Batistas' JBS SA, the global meat powerhouse that seemed to come out of nowhere a decade ago, wouldn't have been possible without a top politician on the take, hundreds of millions of dollars in bribes and a series of sweetheart deals with Brazil's state development bank." A copy of the Bloomberg article is attached as **Exhibit F**.
>
> 84. The Batistas, through the holding company for JBS SA, agreed to pay a fine of $3.2 billion, payable over 25 years. In addition, on information and belief, both Wesley and Joesley Batista are also currently incarcerated.

> 85. According to Bloomberg, "The revelations raise questions about unfair competition abroad as the company gobbled up more than 40 rivals on four continents between 2007 and 2017."
>
> 86. The CEO of a U.S.-based cattle industry group quoted in the Bloomberg article observed: "Through ill-gotten means, JBS has been able to gain control of a large portion of the U.S. cattle industry."

See ECF Doc. # 26, pg. 25-26; ECF Doc. # 26-7 (Exhibit F).

Defendant argues that these paragraphs are relevant to their counterclaims as illustrative of plaintiff's corporate culture, suggesting that fraud by plaintiff's parent entities also speaks to fraud by plaintiff at the Lenoir plant. Having recently reviewed defendant's contentions of fraud under Rule 9(b) and Rule 12(b)(6) standards, the Court does not agree that the relevance of such allegations outweighs their unduly prejudicial impact. Nowhere in defendant's counterclaims does defendant argue that JBS SA or the Batista brothers were involved with or directed the actions of the plant manager in this matter.

The accompanying exhibits also do not support inclusion of such allegations in the Counterclaims. For example, Exhibit C contains the basis of defendant's fraud counterclaim, yet neither Batista brother nor JBS SA is mentioned. Indeed, the court cannot, even under the broadest reading of the pleadings, find that paragraphs 79-86 have any potential relevance to plaintiff's alleged fraud at the Lenoir plant. According to defendant's Counterclaims, plaintiff's fraud is based on misapplication of labor costs to defendant instead of a competitor and favoring a competitor over defendant, not acquisitions of companies by the corporate grandparent of a parent entity on a different continent.

Further, the Court finds that paragraphs 79-86 should also be stricken from the record as "scandalous." Scandalous allegations are those that unnecessarily reflect on a party's moral character or detracts from the dignity of the court. See Cobell v. Norton, 224 F.R.D. 5 (D.D.C.

2004). Scandalous allegations that improperly cast a derogatory light on a party will be stricken, especially if they are immaterial or irrelevant, or "may cause the objecting party prejudice." Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664 (7th Cir. 1992). Indeed, even if a prior incident is potentially relevant, when a party uses "inflammatory language that is not in keeping with the spirit of notice pleading . . . and that is prejudicial to [defendant's] reputation, [defendant's] motion to strike will be granted." Schultz v. Braga, 290 F. Supp. 2d 637, 655 (D. Md. 2003).

Here, defendant contends that paragraphs 79-86 are unequivocally based in fact and thus cannot be scandalous. However, even allegations that are factual can be scandalous if they are immaterial or irrelevant and cast a party in a derogatory light. As pled, the Court cannot find that the paragraphs in question bear any relevance to this matter. As a result, paragraphs 79-86 do little but inflame others against plaintiff by painting plaintiff with the same brush as the Batista brothers and JBS SA.

Where relevance is facially nonexistent and plaintiff may suffer prejudice, the Court finds that paragraphs 79-86 and the accompanying Exhibit F should be stricken from the record since the standard "disfavoring" of a motion to strike is "relaxed" for scandalous allegations. 5C Wright, Miller & Marcus, Federal Practice & Procedure, § 1382 (3d ed. 2004). The Court need not look far to find colleagues striking similar references and allegations. See In re Swine Farm Nuisance Litig., 2015 WL 3948309, at *3 (E.D.N.C. 2015) (striking references in amended complaints to the Communist Party, the People's Liberation Army, and the Chinese government for being prejudicial and having little to no bearing on plaintiffs' underlying claims, as the only connection was the Chinese origin of a defendant's corporate parent).

Finally, defendant argues that the motion to strike should be denied as premature. The Court disagrees. The references to and allegations of a "bribery and collusion scandal" provide a source of negative publicity that could harm plaintiff and plaintiff's business reputation unnecessarily. There is no need to wait to strike irrelevant, prejudicial material, even if prior media coverage has already occurred. See G-I Holdings, 238 F. Supp. 2d at 556 (even if media reports have already occurred and the legal community, public, or jury is already aware of the material, "[i]f a party has suffered prejudice as a result of scandalous allegations . . . the solution under Rule 12(f) is not thereafter to ignore the party's plight").

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion to Strike (#32) is **GRANTED**. Paragraphs 79-86 of defendant's Answer and Counterclaims (#26), as well as Exhibit F, are hereby stricken from the record.

Signed: February 8, 2018

Max O. Cogburn Jr
United States District Judge