UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-176

| | |
|---|---|
| **SWIFT BEEF COMPANY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **ALEX LEE, INC.,** | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on plaintiff's Partial Motion to Dismiss. Having considered plaintiff's motion and reviewed the pleadings, the court enters the following Order.

I.  **Background**

Plaintiff is a meat company that offers a range of brands and programs designed to meet the needs of purchasers. One such program is known as "Case Ready," which provides fresh meat cut and packaged to customer specifications and made ready for placement in coolers or freezers, such as at local grocery stores. Plaintiff offers beef, pork, and poultry options in its Case Ready business line. Defendant is a privately held company with two primary food distribution and retail operating companies: Merchants Distributors, Inc. and Lowes Foods, LLC. They service customers in North and South Carolina, Virginia, West Virginia, Georgia, Alabama, Florida, Tennessee, Ohio, Pennsylvania, and Kentucky. Defendant owns a plant in Lenoir, North Carolina, which is used as a meat processing and packaging facility that defendant leases out to operators.

On April 21, 2014, defendant and plaintiff entered into a Lease Agreement and a Purchase Agreement ("the Agreements"). Through those Agreements, defendant leased the Lenoir plant to

plaintiff. Those agreements also required plaintiff to supply defendant with certain Case Ready products. The Agreements have a ten year term and are linked; if a party fails to perform under one, both may be terminated. Due to a dispute over whether the Agreements were breached, this Court earlier granted a preliminary injunction to bar defendant from evicting plaintiff while more discovery was conducted in this case.

Here, plaintiff moves to dismiss three counts of defendant's counterclaim against plaintiff under Rule 12(b)(6), Federal Rules of Civil Procedure. Plaintiff argues that defendant has failed to state viable claims under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") and for conversion. As to the claim of fraud, plaintiff also contends that defendant has failed to plead fraud with the particularity required by Rule 9(b).

## II.      Standard of Review

A motion to dismiss "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). For purposes of the motion, the factual allegations in the complaint are accepted as true and viewed in the light most favorable to the non-moving party. Coleman v. Md. Court of Appeals, 6266 F.3d 187, 189 (4th Cir. 2010). The court need not accept "unwarranted inferences" or "unreasonable arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. Fed.R.Civ.P. 8(a)(2). Such statement does not require "specific

facts," but need only give defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 544). Finally, "[a] Rule 12(b)(6) motion 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Pisgah Laboratories, Inc. v. Mikart, Inc., 2015 WL 996609, at *2 (W.D.N.C. Mar. 5, 2015) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

In turn, Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." That means that a plaintiff must allege "at a minimum . . . the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008); see also Ingersoll v. Life Indus. Corp., 698 F.Supp.2d 552 (E.D.N.C. 2010); Majeed v. North Carolina, 520 F.Supp.2d 720 (E.D.N.C. 2007). Such facts "are often referred to as the 'who, what, when, where, and how' of the alleged fraud." Wilson, 525 F.3d at 379.

**III. Discussion**

Plaintiff moves to dismiss three counterclaims asserted by defendant for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), conversion, and fraud. The court will consider each claim in turn.

*A. UDTPA violation*

Plaintiff first argues that defendant's UDTPA counterclaim is barred due to failure to plead sufficient facts that allege the kind of substantial aggravating circumstance that the UDTPA requires for a valid claim. To state a claim under the UDTPA, a party must allege facts

showing three elements: "(1) the defendant committed an unfair act or deceptive trade practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." Bob Timberlake Collection, Inc. v. Edwards, 176 N.C.App. 33, 41, disc. rev. denied, 360 N.C. 531 (2006). Whether an act or practice is unfair or deceptive is "a question of law for the court." DiFrega v. Pugliese, 164 N.C. App. 499, 507 (2004).

Guidance on what actually constitutes an unfair or deceptive trade practice is somewhat limited, as it is "a somewhat nebulous concept" that depends on a case's particular circumstances. Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 902 (4th Cir. 1996). Such practices must involve "[s]ome type of egregious or aggravating circumstances" in order to be a violation of the UDTPA. S. Atl. Ltd. P'ship of Tenn. V. Riese, 284 F.3d 518, 535 (4th Cir. 2001) (citations and quotations omitted). Typically, an act or practice is unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Bob Timberlake, 176 N.C.App. at 41. An act or practice is considered deceptive "if it has the capacity or tendency to deceive." Id. A party need not actually show "fraud, bad faith, deliberate or knowing acts of deception, or actual deception." Chastain v. Wall, 337 S.E.2d 150, 153-54 (N.C. Ct. App. 1985) (internal citations and quotations omitted). Rather, it is sufficient to "show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Id. In analyzing such acts, "[i]ntent of the defendant and good faith are irrelevant." Id.; see also Cameron v. Martin Marietta Corp., 729 F. Supp. 1529, 1531 (E.D.N.C. 1990) ("To prevail under the Act, one must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception").

Since proof of such an act or practice entitles a plaintiff to treble damages, other courts have noted that a claim under the UDTPA is made in almost "every complaint based on a commercial or consumer transaction in North Carolina." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (internal quotations and citations omitted). In order to prevent damages from spiraling out of control in every commercial dispute, "North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under" the UDTPA. Id. Thus, to recover under the UDTPA in the context of a contractual relationship, "a party must show substantial aggravating circumstances attending the breach of contract." Bob Timberlake, 176 N.C. App. at 42; see also Birtha v. Stonemor, North Carolina, LLC, 220 N.C.App. 286, 298 (2012), disc. review denied, 366 N.C. 570 (2013) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and alleged UDTPA out of facts that are properly alleged as a breach of contract claim"). Indeed, "North Carolina courts routinely dismiss UDTPA claims asserted in simple breach of contract cases." Harty v. Underhill, 211 N.C. App. 546, 554 (2011).

Most of defendant's allegations are within the realm of contract law are based on the Agreements. As contract disputes, they do not qualify as UDTPA claims. See PCS Phosphate Co., Inc. v. Norfolk Southern Corp., 559 F.3d 212, 224 (4th Cir. 2009) (holding that a railroad's threats to abandon a line going to a mine did not constitute "substantial aggravating circumstances" because they involved a dispute over obligations under the contract between the parties); Canady v. Crestar Mortg. Corp., 109 F.3d 969, 975 (4th Cir. 1997) (holding that even an intentional breach is insufficient for liability to attach under the UDTPA); Broussard, 155 F.3d at 346 ("The district court erred, however, by allowing plaintiffs to advance tort and UDTPA

counts paralleling their breach of contract claims. The crux of this matter is and always has been a contract dispute.").

Defendant's allegations regarding misassignment of labor costs and failure to credit defendant with proceeds are more troubling. Such conduct may or may not rise to the level of a "substantial aggravating circumstance" that would remove this matter from the realm of contract law. See Moore v. Seterus, Inc., 2017 WL 3496485, at *5 (W.D.N.C. 2017) ("where a cause of action presumes the 'existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement,' the issues raised must be relegated to the arena of contract law, and are not appropriate for resolution under tort principles") (quoting Broussard, 155 F.3d at 347). While matters of internal corporate management do not affect commerce as defined by the UDTPA, Wilson v. Blue Ridge Elec. Membership Corp., 157 N.C.App. 355, 358 (2003), the allegations of fraud in allegedly assigning costs incurred by Food Lion to defendant, a Food Lion competitor, have given the Court some concern, as discussed in Section C below.

While the Court agrees with plaintiff that the UDTPA claim is inherently weak as much of it is based on claims cognizable in contract, the Court will not grant the plaintiff's partial motion to dismiss defendant's UDTPA counterclaim at this time. Instead, the court will deny the motion without prejudice as to reconsidering dismissal of this claim after the close of discovery by way of a motion for summary judgment.

*B. Conversion*

Next, plaintiff argues that defendant has failed to state enough facts to support a counterclaim for conversion, claiming that the property in question was not owned by defendant, and thus cannot be the basis of a viable conversion claim. Plaintiff also argues that any funds at

issue cannot be the subject of a conversion claim, as defendant does not allege facts showing that they must have been segregated from other funds. Finally, plaintiff contends that defendant failed to demand the return of any allegedly converted property, and that defendant's conversion claim must therefore fail.

Under North Carolina law, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Peed v. Burleson's, Inc., 94 S.E.2d 351, 353 (1956). When conversion is based on money, it must be identifiable and described as a specific chattel. Alderman v. Inmar Enter., Inc., 201 F.Supp.2d 532, 548 (M.D.N.C. 2002), aff'd per curiam, 58 F.App'x 47 (4th Cir. 2003). If a party receives chattel under contract, there is no conversion until another party makes an absolute, unqualified refusal to surrender the chattel. TSC Research, LLC v. Bayer Chemicals Corp., 552 F.Supp.2d 534, 542 (M.D.N.C. 2008); ACS Partners, LLC v. Americon Group, Inc., 2010 WL 883663, at *11 (W.D.N.C. March 5, 2010).

The Agreements are silent on ownership of supply inventory; thus, defendant's allegation that the supply inventory belongs to it must be taken as true for purposes of the instant motion. See Davis v. Trans Union, LLC, 526 F. Supp. 2d 577, 582 (W.D.N.C. 2007). As the Agreements are silent on this issue, it also potentially removes this counterclaim from the arena of contract law. Finally, defendant alleges that it was unaware of the conversion until after the sale of the property in question had been completed, making any attempt to demand the return of the property impossible. As a result, the Court finds that defendant has pled sufficient facts to survive a Rule 12(b)(6) motion.

*C. Fraud*

Finally, plaintiff alleges that defendant's counterclaim for fraud lacks sufficient particularity under Rule 9(b), arguing that the counterclaim does not specifically identify who made any alleged false representations, the content of the representations, when they were made, or where they were made. Plaintiff also argues that the counterclaim fails to plead facts showing that plaintiff had the requisite intent not to fulfill its contractual promises, or that defendant reasonably relied on any alleged misrepresentation or concealment.

Fraud has six elements: "(1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that there resulted in damage to the injured party." Hudson-Cole Dev. Corp. v. Beemer, 132 N.C. App. 341, 346 (1999). Plaintiff must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," with such information typically referred to as the "'who, what, when, where, and how' of the alleged fraud." Wilson, 525 F.3d at 379. Furthermore, merely failing to carry out a promise in contract "does not support a tort action for fraud." Strum v. Exxon Co., U.S.A., 15 F.3d 327, 331 (4th Cir. 1994). Simply put, "[a]n unfulfilled promise is not actionable fraud . . . unless the promisor had no intention of carrying it out at the time of the promise, since this is a misrepresentation of a material fact." McKinnon v. CV Indus., Inc., 213 N.C. App. 328, 338, disc. review denied, 365 N.C. 353 (2011); see also Wellness Group, LLC v. King Bio, Inc., 2014 WL 1632930, at *4 (W.D.N.C. April 24, 2014); Carolina Power & Light Co. v. Aspect

Software, Inc., 2009 WL 256332, at *2 (E.D.N.C. Feb. 3, 2009) ("the mere fact that the Defendants ultimately failed to fulfill the promises they made to Plaintiffs does not raise the inference that these promises were made 'with the intent to defraud'"). In determining if a promisor had the specific intent not to perform at the time the promise was made, "[m]ere generalities and conclusory allegations will not suffice to sustain a fraud claim." Norman v. Tradewinds Airlines, Inc., 286 F.Supp.2d 575, 594 (M.D.N.C. 2003). Should a plaintiff offer nothing more than its own assertions that the promisor never intended to honor a contract, "dismissal as a matter of law is appropriate." Id.

     Here, the court finds that defendant has pled its fraud counterclaim with sufficient particularity. The particularities are found in defendant's pleadings and highlighted by Exhibit C, an investigative report detailing that the plant's general manager instructed his employees to falsify labor records in June 2015, in order to charge defendant with labor costs that should have been charged to Food Lion (one of defendant's competitors). (Exhibit C, ECF No. 26-4). While plaintiff also argues that the report negates the fraud claim by showing a variety of alternate, reasonable explanations for the labor variances, the existence of alternative explanations does not negate a claim of fraud or make those claims any less plausible. See Houck v. Substitute Trustee Services, Inc., 791 F.3d 473, 484 (4th Cir. 2015) ("To survive a motion to dismiss, a plaintiff need not demonstrate that . . . alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible'") (internal citations omitted). Overall, the court finds that the "who, what, when, where, and how" of the alleged fraud has been stated with sufficient particularity under Rule 9(b), and will therefore deny plaintiff's motion to dismiss on that basis.

The Court also finds that defendant has pleaded sufficient facts for a counterclaim under the more general requirements of Rule 12(b)(6). While plaintiff argues that defendant has failed to plead sufficient facts to show that plaintiff did not intend to comply with the Agreement, this does not appear to be the crux of defendant's counterclaim. Defendant is not arguing that plaintiff fraudulently entered into the Agreements or intended and failed to carry them out, but that plaintiff defrauded defendant in the context of the parties' relationship by using their relationship as an opportunity to pass on labor costs that would otherwise have gone to another party. In doing so, defendant's argument does not appear to be predicated on plaintiff's performance under the Agreements or a breach thereof, but rather on actions plaintiff took in regards to labor variances that defendant alleges were fraudulent. As such, the court finds that defendant's pleadings appear to show a sufficient factual basis, interpreted in a light most favorable to defendant, to survive a Rule 12(b)(6) motion to dismiss.

Finally, plaintiff argues that defendant could not have reasonably relied on plaintiff's alleged fraudulent misrepresentations because it conducted an investigation in early 2016 and did not immediately attempt to end the parties' relationship. However, the plant manager's allegedly fraudulent actions took place in 2015, meaning that such costs and alleged damages had already been passed to defendant before the 2016 investigation took place. As a result, that investigation could not be construed as providing defendant with knowledge of the alleged fraud in time to prevent it. In sum, the court finds that defendant has pleaded allegations of fraud with sufficient particularity and an adequate factual basis to survive a motion to dismiss.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Partial Motion to Dismiss (#30) is **DENIED.** Plaintiff is granted leave to reassert the substance of the Motion to Dismiss as to the UDTPA claim on a Motion for Summary Judgment, filed after the close of discovery, when the Court can consider the evidence of record concerning the alleged assignment of competitor costs to defendant.

Signed: February 8, 2018

Max O. Cogburn Jr
United States District Judge