UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-00176-MOC-DSC

| | |
|---|---|
| **SWIFT BEEF COMPANY**, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>**ALEX LEE, INC.**, )<br>)<br>Defendant. ) | ORDER |

**THIS MATTER** is before the Court on the Mandate of the Fourth Circuit Court of Appeals (#70), vacating and remanding this Court's Amended Order (#18), granting plaintiff Swift Beef's Emergency Motion for a Temporary Restraining Order (#3). In conformity with the instructions of the appellate court, this Court directed additional briefing and conducted a hearing on February 15, 2019, at which oral arguments were heard. For the reasons that follow, the Court denies plaintiff's motion.

## FINDINGS AND CONCLUSIONS

### I. Factual and Procedural Background

The facts underlying the request for injunctive relief and these proceedings were summarized by the Court in its earlier Amended Order, see Am. Or. (#18), and are incorporated herein by reference. Additional determinations, consistent with the decision of the appellate court, are discussed later in this opinion.

#### A. The Amended Order Providing Injunctive Relief

In its Response in Opposition to Plaintiff's Motion for Preliminary Injunction (#13), defendant Alex Lee argued that plaintiff failed to produce products in accordance with Section 3

of the Purchase Agreement, which in turn gave defendant the right to terminate under Section 18.3 of the Lease. See Motion (#13) at 9. The Court declined to address defendant's termination rights under Section 18.3 of the Lease because it concluded that Section 18.2 of the Lease was the appropriate termination provision and that defendant did not provide written notice of default or an opportunity to cure such default pursuant to its Section 18.2 obligations. See Am. Or. (#18) at 6. Based on this finding, this Court held plaintiff was likely to succeed at trial and granted the injunction.

### B. The Decision of the Fourth Circuit

The appellate court vacated the imposition of injunctive relief and remanded this matter for full consideration of the scope of the landlord's rights of termination under the Lease. Specifically, appellate court instructed:

> Under the plain language of Section 18.3, Alex Lee could "immediately terminate" the lease if Swift Beef failed to comply with Section 3 of the purchase agreement. That section of the purchase agreement set forth the pricing structure for the meat products supplied to Alex Lee, requiring Swift Beef to "use commercially reasonable efforts to produce the Product efficiently and at competitive cost."
> 
> ***
> 
> Although the district court did not cite Section 3 of the purchase agreement, the court referenced nearly identical language from that provision, finding that Alex Lee presented evidence "cast[ing] serious doubt" on whether Swift Beef used "commercially reasonable efforts to produce Case Ready goods efficiently and at competitive prices." The court concluded nevertheless that any non-compliance by Swift Beef with the purchase agreement was not relevant to the issue whether Alex Lee validly terminated the lease under Section 18.2, because Alex Lee had failed to give the required notice and opportunity to cure.
> 
> We disagree with the district court's analysis. The disputed factual issue of Swift Beef's performance under the purchase agreement was directly relevant to the question whether Alex Lee could rely on Section 18.3 in terminating the lease without notice, and whether Swift Beef could succeed on the merits of its anticipatory breach claim. Thus, both the disputed facts at issue and the differing termination provisions of the lease necessitated consideration of Section 18.3 before any injunctive relief could be awarded in the case.

See (#70) at 3, 8. The Circuit thus vacated this Court's preliminary injunction prohibiting defendant from terminating the Lease and from initiating eviction proceedings, remanded the case for further proceedings, and instructed the Court to consider the applicability of Section 18.3 before awarding injunctive relief in the case. See id. at 8–9.

## II. Discussion

Upon the further review conducted in compliance with the instructions above, the Court finds that Section 18.3 is the appropriate termination provision and that defendant was not required under the contract to given written notice of default and opportunity to cure under Section 18.2 of the Lease. For the reasons that follow, this Court concludes that plaintiff has not clearly shown that it is likely to succeed under Section 18.3 and will deny the injunctive relief sought.

\*\*\*

On remand, this Court is tasked with considering the forecast of evidence concerning plaintiff's alleged breach of Section 3 of the Purchase Agreement, which would trigger defendant's right to immediately terminate the lease under Section 18.3 under the Lease Agreement. In light of that review, the issue is whether plaintiff has satisfied the four *Winter* factors—particularly the element requiring a clear showing that plaintiff is likely to succeed at trial—with respect to each of defendant's breach claims that fall under Section 3 of the Purchase Agreement and Section 18.3 of the Lease.[1] After considering the Fourth Circuit's directives, the Court instructed the parties to brief the issues before the Court, see (##79, 80, 81), and held a

---

1 *See* Am. Or. (#18) at 6, explaining that defendant's breach claims -- that only allow for termination under Section 18.2 of the Lease -- are not likely to succeed at trial because defendant did not satisfy its obligation under section 18.2 to (i) provide plaintiff with written notice of the deficiencies, (ii) describe when defendant provided plaintiff with such written notice, and (iii) assert that plaintiff was unable to cure noticed deficiencies within the contractual 30 day period.

hearing on the matter on February 15, 2019. For the reasons stated at the hearing and explained herein, this Court finds that the appropriate course of action at this juncture is to deny the injunction.

Whether to grant injunctive relief is within the sound discretion of the district court. See Hughes Network Sys. V. InterDigital Commc'ns Corp., 17 F.3d 691, 693 (4th Cir. 1994). However, granting a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way. The danger of a mistake in this setting is substantial." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) (citations and internal quotations omitted). Consequently, a preliminary injunction is "an extraordinary remedy . . . which is to be applied 'only in [the] limited circumstances' which clearly demand it." Direx Israel, Ltd. V. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3rd Cir. 1989)). The injunction must "be tailored to restrain no more than what is reasonably required to accomplish its ends." Consolidation Coal Co. v. Disabled Miners of S.W. Va., 442 F.2d 1261, 1267 (4th Cir. 1971).

A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008). While a balancing test was previously used, today every preliminary injunction factor must be "satisfied as articulated" and courts "must separately consider each *Winter* factor." Pashby v. Delia, 709 F.3d 307, 320 (4th Cir. 2013) (citing The Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009)). In considering the Winter elements, the Court will consider each factor separately and delve into why

each factor has been satisfied as articulated, particularly the element requiring plaintiff to show that it is likely to succeed on the merits.

### A. Examination of Breach Claims and Termination Provisions

The parties have executed two agreements detailing their rights and obligations: a Lease and a separate Purchase Agreement. When the Lease is terminated, the Purchase Agreement automatically terminates as well. See Compl. Ex. B (#1-2) § 22. The Lease sets forth two different procedures for terminating the Lease obligations.

The first procedure for terminating the Lease is found in Section 18.2 of the Lease Agreement, and provides:

> In the event of [Swift Beef's] *Default,* [Alex Lee], at its option, may, unless the [default] *is cured within [30] days after written notice* of [default] is delivered to [Swift Beef], immediately terminate this Lease and all of the rights of occupancy . . . and then [Alex Lee] shall have the right to enter the Property and remove all persons and property from the Property.

Lease Agreement at § 18.2 (emphasis added). Thus, to terminate the Lease under Section 18.2, defendant was required to provide plaintiff with written notice and a 30-day period to cure any default. A default under the Lease includes any breach of obligations in the Lease or the Purchase Agreement.

A second termination procedure is contained in Section 18.3 and does not require written notice of default or an opportunity to cure:

> *Notwithstanding anything to the contrary* contained herein, if [plaintiff] fails, refuses, or is unable to produce Products for [defendant] in accordance with *Section 3 of the Purchase Agreement*, [defendant] may, in its sole discretion, *immediately terminate* this Lease and all of the rights of occupancy of [Swift Beef] under this Lease effective immediately upon the delivery of written notice (or effective at such time as otherwise set forth in the written notice) to [plaintiff].

Lease Agreement at § 18.3 (emphasis added). Under Section 18.3, defendant could "immediately terminate" the Lease if plaintiff fails to comply with Section 3 of the Purchase Agreement. Section 3 sets forth the pricing structure for the meat products supplied to defendant, requiring plaintiff to "use commercially reasonable efforts to produce the Product efficiently and at competitive cost."

### B. Likelihood of Success on the Merits

First, the Court considers the likelihood of plaintiff's success on the merits. Plaintiff must make a "clear showing" they are likely to succeed at trial. Real Truth, 575 F.3d at 345. However, plaintiff "need not show a certainty of success." Pashby, 709 F.3d at 321 (citing 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.3 (2d ed. 1995)). Furthermore, "the possibility of irreparable harm does not constitute a 'clear showing' that the plaintiff is entitled to relief." Di Biase v. SPX Corp., 2017 U.S. App. LEXIS 18757, *21 (4th Cir. Sept. 28, 2017). When plaintiff has produced undisputed evidence on the issue at hand, they have established a clear showing that they are likely to succeed at trial. See League of Women Voters v. North Carolina, 769 F.3d 224, 246 (4th Cir. 2014).

In conducting this inquiry, the Court first considers the nature of the substantive claim asserted by plaintiff in its Complaint. Here, plaintiff contends that defendant, in threatening to prematurely terminate the Lease, is anticipatorily breaching the contract that exists between the parties. See Am. Or. (#18) at 4 ("It does not appear that either party challenges the validity of the underlying contract; thus, the issue is whether plaintiff will likely show by a preponderance of the evidence that defendant has anticipatorily breached that agreement.").

"Breach of contract occurs when a party fails to perform a contractual duty which has become absolute." Millis Constr. Co. v. Fairfield Sapphire Valley, 86 N.C. App. 506, 510 (1987). In contrast, an anticipatory breach occurs when "[a] breach is committed before there is a present

duty of performance, and is the outcome of words evincing intention to refuse performance in the future." Cook v. Lawson, 3 N.C. App. 104, 107 (1968) (citation omitted) (internal quotations omitted). In considering whether plaintiff has made a clear showing, the Court has closely reviewed both parties' allegations and evidence pursuant to the Fourth Circuit's directives. See (#70) at 3, 8.

Here, the burden of proof here is on plaintiff, and it is a high one. It is not enough to show that plaintiff disagrees with defendant's assertions of breach; rather, plaintiff must make a "clear showing" that it is "likely to succeed at trial." Di Biase, 872 F.3d at 230. In its Supplemental Brief (#79), plaintiff argues that it has presented evidence via affidavit and testimony from its employee, Mr. Adam Bode, demonstrating that it "has performed under the Agreements," "never failed refused, or been unable to produce Case Ready fresh meat products for Alex Lee," "used commercially reasonable efforts to produce" such meat, and investigated and cured defendant's complaints. See Pl.'s Supp. Br. (#79) at 2 (citing Bode Decl. (#4-1) at 5, ¶ 13; 6, ¶ 17 and Hr'g Tr. (#17) 33:23-38:1). Plaintiff also contends defendant never presented evidence showing that plaintiff breached Section 3 of the Purchase Agreement; particularly, that it did not use "commercially reasonable efforts." To refute these claims, defendant argues that it has presented the following evidence showing plaintiff has breached Section 3 of the Purchase Agreement:

- Swift Beef consistently failed to meet industry service level standards for its operations at the plant, which is a primary measure of efficiency, dropping to as low as 32.4 percent in June 2017. (D.E. 13-1, ¶¶ 10-12; D.E. 17 at 63:19-66:10.)

- Swift Beef knowingly and improperly allocated labor costs to Alex Lee that should have been allocated to Alex Lee's competitor, Food Lion. (D.E. 13-1, ¶¶ 14-19 and Ex. C; D.E. 17 at 68:8-70:14.)

- Swift Beef's inefficient management of the plant increased the cost of meat products to the point that Alex Lee had to source meat products from other parts of the country rather than from its own plant in Lenoir. (D.E. 13-1, ¶¶ 27-30; D.E. 17 at 70:15-71:9.)

Def.'s Supp. Br. (#80) at 3. The crux of plaintiff's argument is that: (1) Section 3 of the Purchase Agreement "*solely* concerns '**PRICING**,'" Pl.'s Supp. Br. (#79) at 2 (emphasis in original), and all or most of defendant's complaints about plaintiff's performance under the contract do not concern pricing; and (2) defendant's evidence does not show that plaintiff did not use "commercially reasonable efforts" to abide by Section 3 of the Purchase Agreement.

For the reasons which it will now discuss, the Court finds that defendant has presented evidence that disputes plaintiff's proffer, see League of Women Voters, 769 F.3d at 246, and, if believed by a finder of fact, would support a finding that plaintiff violated section 3 of the Purchase Agreement, leading the Court to conclude that plaintiff has not made a clear showing that is likely to prevail at trial on these allegations.

First, Section 3 of the Purchase Agreement does not solely concern pricing. While section 3 of the Purchase Agreement is, as plaintiff argues, entitled "PRICING," the last sentence of that provision requires plaintiff to use reasonable efforts to produce the product efficiently *and* at competitive cost. See Canadian Am. Ass'n of Prof'l Baseball, Ltd. v. Ottawa Rapidz, 213 N.C. App. 15, 20 (2011) ("[H]eadings do not supplant actual contract language and are not to be read to the exclusion of the provisions they precede."); Doe v. Jenkins, 144 N.C. App. 131, 135 (2001) ("[A]n insured is not entitled to read only the heading and ignore the operative language of the provision itself."). In other words, along with Section 18.3 of the Lease, this provision allows for

immediate termination for a breach involving either pricing or efficiency.[2] Here, defendant has provided substantial evidence of both noncompetitive pricing and inefficient production of meat by plaintiff. These allegations fall directly under Section 3 of the Purchase Agreement and, therefore, would, if later found to be true, be a basis for immediate termination under Section 18.3 of the Lease.

Second, defendant has presented evidence that could support a finding that plaintiff failed to use "commercially reasonable efforts" under Section 3 of the Purchase Agreement. With plaintiff's proffer of evidence on this issue firmly disputed, see League of Women Voters, 769 F.3d at 246, plaintiff has not made a clear showing that it is likely to succeed at trial on defendant's breach claims. Although plaintiff is correct in noting that the Bode Declaration (#4-1) is the only evidence that <u>directly</u> addresses whether it used "commercially reasonable efforts" to produce products efficiently and at a competitive cost, the opposing Declaration of Mr. Chris Van Parys (#13-1) contains sufficient contradictory averments which could support a finding that plaintiff may not have used "commercially reasonable efforts." In his declaration, Mr. Van Parys avers

---

[2] Although broad, this construction of section 3 of the Purchase Agreement also makes sense when the parties' agreements are viewed in context:
> Alex Lee is not in the business of owning and managing meat processing plants for the benefit of other grocers. Alex Lee is in the business of buying and selling meat products and other grocery items through its own grocery stores (Lowes) and food distribution company (MDI). Alex Lee entered into the Lease and Purchase Agreement with Swift Beef with the specific intent of receiving case ready meat products for Lowes and MDI.

Def.'s Supp. Br. (#80) at 2. Alex Lee negotiated immediate termination rights under section 18.3 of the Lease to protect against a situation where Swift Beef does not use "commercially reasonable efforts" to produce meat for Alex Lee efficiently and at competitive cost. Initially, the Court expressed concerned that such a broad interpretation of section 3 of the Purchase Agreement would effectively negate Alex Lee's obligations to provide notice and opportunity to cure under section 18.2 of the Lease Agreement. However, Alex Lee has satiated the Court's concerns by providing examples of breaches that would not allow for immediate termination under section 18.3 of the Lease in its Response in Opposition to the Motion for Preliminary Injunction (#13), and again during oral arguments on February 15, 2019. See (#13) at 9 (discussing problems with the quality of products shipped supplied by Swift Beef, such as sausage having unacceptable amounts of bone fragment and unacceptably short shelf life for ground beef). In other words, Alex Lee's obligation to provide notice and opportunity to cure under section 18.2 is not eviscerated with the Court's application of section 18.3 of the Lease to the present facts.

that he is the Vice President of Fresh Sales with Lowes Foods, LLC, a grocery store chain owned by defendant; that he is familiar with both the Purchase Agreement and the Lease; that case ready meat products fall within the scope of his job responsibilities; that he is personally familiar with plaintiff's production of product pursuant to the Purchase Agreement; and that plaintiff's pricing and efficiency continuously fell below market standards. Van Parys Decl. (#13-1).[3] In light of this evidence, the Court finds plaintiff has not made a clear showing that it is likely to succeed at trial on defendant's section 3 breach claims.

Finally, plaintiff argues that, of the three allegations listed above, only one "even arguably falls within the provisions of Purchase Agreement § 3 is that Swift improperly allocated certain labor costs." See Pl.'s Reply Br. (#81) at 2 (arguing plaintiff has provided evidence refuting defendant's allegations that plaintiff improperly allocated certain labor costs and that defendant has not responded to plaintiff's evidence to this effect). The Court disagrees with this assessment. Even if plaintiff has provided evidence that tends to rebut defendant's allegations that plaintiff improperly allocated certain labor costs, the Court credits the relevance and importance of defendant's remaining evidence, which "casts serious doubt on whether plaintiff has fully upheld their obligations under the terms of the [Purchase Agreement], to wit, that plaintiff may have failed to use commercially reasonable efforts to produce Case Ready goods efficiently and at competitive prices." See Am. Or. (#18) at 6–7. This conclusion was true at the time the Court issued Amended Order (#18), and it remains true today—the difference now being the applicability of the immediate termination provision in Section 18.3 of the Lease, which does not have the notice and

---

3 In particular, Mr. Van Parys declared that "Swift Beef did not have the proper equipment to meet service level agreements promised to the Other Customer, and Swift Beefs products were priced too low for its relationship with the Other Customer to be profitable" . . . "Swift Beef has consistently failed to meet industry service level standards for its operations at the Plant" . . . "Passing along the Other Customer's labor costs to Alex Lee had a direct and substantial impact on Alex Lee's costs of goods." Van Parys Decl. (#13-1)

opportunity to cure requirements of Section 18.2. Plaintiff has, therefore, not made a clear showing that it is likely to succeed at trial on defendant's breach claims. Plaintiff's inability to succeed on this <u>Winter</u> factor alone is a sufficient basis for the Court to deny Swift Beef's renewed request for injunctive relief.[4]

### C. An Injunction Is Not Necessary

The process established by North Carolina law for effecting the eviction of a tenant requires the issuance of a writ of possession and execution of that writ by the county sheriff. See generally N.C. Gen. Stat. § 42-26, *et seq*. It is not clear how that process would work if the order authorizing eviction originates from federal court rather than state court. To satiate the Court's concern that it would be inefficient and confusing to have parallel proceedings in state and federal court, defendant proposed the parties stipulate as follows:

> Alex Lee will agree to stipulate that it will not initiate separate proceedings in state court if Swift Beef will stipulate that upon entry of a final order in federal court that supports Alex Lee's termination of the Lease, Swift Beef will not contest eviction further in any court and will vacate the leased premises within 60 days.

Def.'s Supp. Br. (#80) at 5. This compromise would, more-or-less, eliminate any need for injunctive relief. During the February 15, 2019 oral arguments, both parties appeared to be interested in entering into this sort of agreement, but they could not, on their own, agree on the language or terms. The Court stated during the hearing, and reiterates now, that it will not get in the middle of this hostile and convoluted business negotiation. As this case progresses, the Court encourages the parties to engage one another in reasonable negotiations and reach a tolerable

---

[4] Even if the Court concluded that Section 18.2 applies rather than 18.3, plaintiff is still not entitled to injunctive relief. To remove any doubt, defendant sent a supplemental notice of default to plaintiff on October 23, 2017, shortly after the injunction was entered. See Ans. & Countercl. Ex. E (#26-6). "Far more than 30 days have passed since Swift Beef's receipt of both default letters and many of the breaches referenced therein have not been remedied. Thus, even if Section 18.2 applies, Swift Beef is still incapable of showing sufficient likelihood of success to support a new injunction." Def.'s Supp. Br. at 4 (#80).

compromise outside of court. Again, the Court has little tolerance for being used as a bargaining chip in determining the sale price of a plant that defendant obviously wants to sell, and plaintiff obviously wants to buy. The Court refrains from ordering an out-of-court resolution on the injunction issue but notes that an injunction is not necessary here because, by the parties' own admissions, a stipulation could easily accomplish both parties' goals by establishing a mechanism of eviction/removal of plaintiff, if it loses the case, and by alleviating the "imminent threat of harm" of ejectment for plaintiff pending resolution of the substantive issues in this case.

Because the parties have acknowledged that a stipulation could achieve desirable results for both sides and have indicated a willingness to do so upon receiving satisfactory terms from the other side, the Court is persuaded that an injunction is not necessary. Cf. Direx Israel, Ltd., 952 F.2d at 811 (holding a preliminary injunction is "an extraordinary remedy . . . which is to be applied 'only in [the] limited circumstances' which clearly demand it").

### ORDER

**IT IS, THEREFORE, ORDERED** that, having considered the issues in conformity with the instructions of the Court of Appeals for the Fourth Circuit, plaintiff's Emergency Motion for a Temporary Restraining Order (#3), which has been converted to a motion for preliminary injunction, is **DENIED**.

Signed: February 22, 2019



Max O. Cogburn Jr
United States District Judge